**Office of Disciplinary Counsel v. Davis**

Disciplinary Board Docket no. 17 D.B. 2004.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

CURRAN, *Member,* April 28, 2005—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On February 5, 2004, Office of Disciplinary Counsel filed a petition for discipline against Delancey W. Davis, respondent. The petition charged respondent with violations of the Rules of Professional Conduct and Rules of

Disciplinary Enforcement arising out of his unauthorized practice of law while on inactive status in violation of an order of the Supreme Court of Pennsylvania. Respondent did not file an answer to petition for discipline. As a result, pursuant to Pa.R.D.E. 208(b), the allegations of the petition for discipline are deemed admitted.

A disciplinary hearing was held on July 14, 2004, before Hearing Committee 2.11 comprised of Chair Matthew R. Sorrentino, Esquire, and Members Robert J. Donatoni, Esquire, and Miles A. Jellinek, Esquire. Respondent appeared pro se.

The Hearing Committee filed a report on January 12, 2005, finding that respondent violated the rules as charged in the petition for discipline, and recommending that he be suspended for one year and one day.

This matter was adjudicated by the Disciplinary Board at the meeting of March 16, 2005.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is situated at Suite 1400, 200 North Third Street, Harrisburg, PA 17101, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, Delancey W. Davis, was born in 1939 and was admitted to practice law in the Commonwealth

in 1983. Respondent is subject to the jurisdiction of the Disciplinary Board of the Supreme Court.

(3) Respondent has no prior history of discipline.

(4) Respondent was placed on inactive status by order of the Supreme Court dated November 27, 1991. The effective date of this order was December 27, 1991.

(5) By letter dated December 6, 1991, Elaine M. Bixler, assistant secretary of the Disciplinary Board, advised respondent that he had been placed on inactive status for failure to comply with Pa.R.D.E. 219, and he was required to comply with the Pennsylvania Rules of Disciplinary Enforcement and Disciplinary Board Rules.

(6) Ms. Bixler's correspondence included enclosures of the order of the Supreme Court dated November 27, 1991, as well as standard guidance for attorneys placed on inactive status and various forms pertaining to notice of inactive status.

(7) Ms. Bixler's December 6, 1991 correspondence and enclosures were sent by certified mail, return receipt requested, to respondent's last registered address of Satterlee, Stephens et al., 230 Park Avenue, New York, NY 10169.

(8) Respondent received Ms. Bixler's correspondence and enclosures about December 11, 1991.

(9) Respondent never filed with the Disciplinary Board a verified statement showing his compliance with the Disciplinary Board Rules.

(10) Respondent has been on inactive status from December 27, 1991, to the present.

(11) On October 26, 2001, District Justice Stanley Scott, in Magisterial District 15-2-07, Lionville, Pennsylvania, entered a judgment for James Taylor against The Inn at Historic Yellow Springs.

(12) On November 26, 2001, respondent, in his capacity as attorney for The Inn, filed or, caused to be filed, a notice of appeal and praecipe to enter rule to file complaint in the matter of *Taylor v. The Inn.*

(13) Shortly after November 26, 2001, Attorney Joseph Chupein telephoned respondent, at which time he informed respondent he was the attorney for James Taylor.

(14) Respondent identified himself as attorney for defendant, The Inn.

(15) Respondent and Attorney Chupein discussed the nature of the relative claims of the parties.

(16) On August 13, 2002, respondent and Attorney Chupein engaged in a settlement discussion.

(17) Between August 13, 2002 and September 13, 2002, respondent, in his capacity as attorney for The Inn, engaged in several conversations with Attorney Chupein regarding the matter.

(18) On September 13, 2002, Attorney Chupein transmitted the pre-arbitration memorandum of the Taylors to respondent.

(19) On September 20, 2002, the arbitration hearing was conducted in the *Taylor* matter at which time respondent identified himself as attorney for The Inn, participated as an attorney by making statements to the arbitration panel, cross-examined the Taylor witnesses, and made closing argument to the arbitration panel.

(20) Shortly after October 23, 2002, respondent informed Attorney Chupein in a telephone conversation that respondent would not be representing The Inn at trial, but he would continue to discuss the potential for settlement.

(21) On October 28, 2002, respondent faxed a handwritten document to Attorney Chupein outlining various costs incurred by The Inn in connection with the event giving rise to the dispute.

(22) On November 15, 2002, respondent left a message for Attorney Chupein indicating that The Inn had rejected the settlement offer.

(23) Throughout respondent's entire representation of his client in the *Taylor* matter, he had not been reinstated to active status.

(24) With regard to the *Taylor* matter, respondent never notified or caused to be notified, by registered or certified mail, return receipt requested or in any manner whatsoever: (1) his client involved in the litigation; (2) the attorney for the adverse party; or (3) the court, of his transfer to inactive status and his consequent inability to act as an attorney.

(25) On October 25, 2002, Attorney John B. Frock filed a complaint in Magisterial District 15-2-07, District Justice Stanley Scott, in the matter of *Louis I. Mandich Jr. v. The Inn at Historic Yellow Springs.*

(26) In early November 2002, respondent telephoned Attorney Frock and advised him that he was the attorney for The Inn. Respondent further advised that The Inn would be entering a defense and denied liability on the part of the defendants.

(27) On January 16, 2003, a hearing was held before Judge Scott.

(28) At the hearing, respondent introduced himself to Attorney Frock as counsel for the defendant and, upon request of Judge Scott, identified himself as counsel for defendant.

(29) At the January 16, 2003 hearing, Attorney Frock advised the court that he believed respondent was not entitled to practice law in Pennsylvania.

(30) Attorney Frock provided both respondent and Judge Scott with a copy of certification from Suzanne Price, attorney registrar of the Disciplinary Board, which certified that respondent was not registered as an active member of the Pennsylvania bar and was not entitled to practice before any Pennsylvania court or District Justice.

(31) After being provided with the certification, respondent represented to Judge Scott that:

(a) Respondent was permitted to practice law;

(b) He had a Pennsylvania attorney identification number, but he could not produce it at that moment;

(c) He had served in the attorney general's office or the district attorney's office for years in New York and Washington;

(d) He had moved to Pennsylvania in 1991; and

(e) There had been a mistake and he would take steps to correct the error.

(32) Thereafter, Judge Scott informed respondent he could not represent the defendant and directed respondent to straighten out the matter. He further granted defendants a continuance so they could either obtain other counsel or be assured that respondent's status to practice law was resolved.

(33) On February 20, 2003, a hearing was conducted before Judge Scott in the *Mandich* matter, at which time the defendants appeared pro se and respondent did not appear.

(34) Throughout respondent's entire representation of his client in the *Mandich* matter, respondent had not been reinstated to active status.

(35) With regard to the *Mandich* matter, respondent never notified or caused to be notified, by registered or certified mail, or in any manner whatsoever: (a) his client involved in the litigation; (2) the attorney for the adverse party; or (3) the court, of his transfer to inactive status and his consequent inability to act as a lawyer.

(36) On April 24, 2002, Keith A. Raquet served on respondent a complaint in civil action in the matter of *Keith A. Raquet v. The Inn at Historic Yellow Springs.*

(37) Respondent accepted service of the document and indicated his relationship as attorney for defendant.

(38) On May 20, 2002, a hearing was conducted in the *Raquet* case before Judge Stanley Scott of Magisterial District 15-2-07.

(39) At the May 20, 2002 hearing, respondent entered his appearance and represented himself to the court as attorney for defendant; he cross-examined witnesses; and made legal argument to Judge Scott.

(40) On June 10, 2002, respondent filed, or caused to be filed, a notice of appeal in the *Raquet* matter.

(41) Between November 20, 2002 and January 16, 2003, respondent and Mr. Raquet engaged in nine telephone conversations and two face-to-face meetings in which respondent held himself out as attorney for the defendants in an attempt to resolve the outstanding discovery issues.

(42) On January 24, 2003, an arbitration hearing was scheduled to be held in the *Raquet* matter in the Court of Common Pleas of Chester County.

(43) At the January 24, 2003 hearing:

(a) Respondent identified himself as attorney for the defendants;

(b) Mr. Raquet objected to respondent's representation on the basis that he had not entered his appearance;

(c) Respondent acknowledged that he had not entered his appearance but offered to formally do so after the proceeding;

(d) Respondent contended that his presence before the arbitration panel was a form of entry of appearance which should be sufficient;

(e) Mr. Raquet provided the panel with a copy of a certification dated January 24, 2003, from Suzanne Price, attorney registrar, indicating that respondent was transferred to inactive status.

(f) Respondent acknowledged his inactive status and indicated that it was only a fee issue that he was currently in the process of resolving with the Disciplinary Board;

(g) Respondent requested permission to proceed with the case;

(h) After conference, the arbitration panel informed both parties that respondent would not be allowed to represent the defendant; and

(i) The defendant refused to proceed with the arbitration.

(44) Throughout respondent's entire representation of his client in the *Raquet* matter, respondent had not been reinstated to active status.

(45) With regard to the *Raquet* matter, respondent never notified or caused to be notified, by registered or certified mail, or in any manner whatsoever: (1) his client involved

in the litigation; (2) the attorney for the adverse party; or (3) the court, of his transfer to inactive status and his consequent inability to act as an attorney.

(46) At the disciplinary hearing, respondent acknowledged that when he appeared in the *Taylor, Mandich* and *Raquet* matters, he was representing his client as an attorney.

(47) From 1982 to 1987, respondent was a Pennsylvania Deputy Attorney General, and during that time he remitted his attorney registration fee and received his Pennsylvania license to practice each year.

(48) Since being placed on inactive status in 1991, respondent has not paid his annual fee, nor has he been in contact at all with the Disciplinary Board relating to paying his annual fee.

(49) Respondent had in his possession, at the time of the disciplinary hearing, a Pennsylvania license to practice law that expired July 1, 1987.

(50) In addition to representing The Inn while he was on inactive status, respondent participated as an attorney in his mother's and mother-in-law's estate matters and negotiated with the IRS in the appellate division.

(51) Respondent could not provide an explanation as to why he believed he was entitled to practice law despite not having paid his annual fee in over 13 years, and despite not having a current license card.

(52) Respondent believed he was not doing anything that he considered legally involved.

### III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 1.16(a)(1)—A lawyer shall not represent a client, or, where representation has commenced, shall withdraw from the representation of a client if the representation will result in a violation of the Rules of Professional Conduct or other law.

(2) R.P.C. 5.5(b)—A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction.

(3) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(4) R.P.C. 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

(5) Pa.R.D.E. 217(d)—A formerly admitted attorney transferred to inactive status shall not accept any new retainer or engage as an attorney for another in any new case or legal matter of any nature.

(6) Pa.R.D.E. 217(j)—A formerly admitted attorney is precluded from engaging in law-related activities except in accordance with the detailed requirements of this rule, and a formerly admitted attorney is prohibited from representing himself or herself as a lawyer or person of similar status.

## IV. DISCUSSION

Respondent has been on inactive status and not authorized to practice law in Pennsylvania since December 27, 1991. Notwithstanding this fact, respondent represented, as an attorney, The Inn at Historic Yellow Springs in three separate matters.

Respondent received notice of his transfer to inactive status and inability to practice law on December 11, 1991. Moreover, respondent has not paid his annual fee nor had any contact with the Disciplinary Board since 1991. Respondent provided no explanation regarding his justification for practicing law in Pennsylvania, other than to state that he did not believe he was doing anything he considered to be legally involved.

The record is unequivocally clear that respondent was engaging in legal matters as an attorney when he represented his client in three different suits. He identified himself as the attorney for his client. He appeared at arbitrations and in court on behalf of his client, filed documents and engaged in settlement discussions. Respondent cross-examined witnesses and made closing arguments. Respondent clearly knew he was acting as an attorney and to claim otherwise is disingenuous.

In January 2003, respondent was specifically confronted by District Justice Stanley Scott and Attorney John Frock with allegations of his inability to practice law. At that time, respondent stated to the district justice that he was permitted to practice law and had a Pennsylvania attorney identification number, but could not produce it at that moment. Respondent claimed the issue of his status was the result of a mistake and he would correct it. District Justice Scott did not permit respondent to represent his client and continued the hearing. Less than two weeks later respondent appeared at an arbitration hearing at the Chester County Courthouse and identified himself as the attorney for The Inn at Historic Yellow Springs. Again, when confronted about his status as an attorney, respondent claimed that it was simply a fee issue and he was currently resolving it. He requested permission to proceed with the case,

which was denied by the arbitration panel. Respondent's false statements to Judge Scott and to the arbitration panel were designed to create the impression that respondent's inactive status was a technicality that could easily be remedied.

The board and the court have previously considered cases of practicing law while on inactive status. Depending on the presence of aggravating and mitigating factors and the degree of willfulness exhibited, suspensions ranging from three months to two years have been imposed in recent cases. Several recent cases have resulted in suspensions of one year and one day. In *Office of Disciplinary Counsel v. Brown,* 64 D.B. 2003, 954 Disciplinary Docket no. 3 (Pa. Oct. 15, 2004), Mr. Brown was employed as a part-time public defender in Erie County. While on inactive status, he defended at least 97 criminal defendants from January 2001 to February 2002. In *Office of Disciplinary Counsel v. Forman,* 70 D.B. 2001, 799 Disciplinary Docket no. 3 (Pa. Jan. 31, 2003), Mr. Forman continued to practice law for 12 years while on inactive status. In the matter of *Office of Disciplinary Counsel v. Harrigan,* 123 D.B. 2000, 782 Disciplinary Docket no. 3 (Pa. Nov. 25, 2002), Mr. Harrigan was placed on inactive status for failure to comply with his continuing legal education. While on inactive status, the attorney used letterhead and held himself out as a practicing attorney. He had a long history of transfers to inactive status for failure to fulfill his administrative responsibilities regarding his law license, and had a history of two informal admonitions, one of which was for practicing law while on inactive status.

The only mitigation produced by respondent was his lack of prior discipline since his bar admission in 1983.

Respondent offered no character witnesses and no plausible explanation for his misconduct.

Accordingly, the board is persuaded that the totality of the facts of record and the sanctions imposed in prior similar matters support a period of suspension of one year and one day for respondent.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Delancey W. Davis, be suspended from the practice of the law for a period of one year and one day.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Members Sheerer, Wright and Suh dissented and would recommend a three-year suspension.

Board Members McLaughlin, Brown, Pietragallo and Nordenberg did not participate in the March 16, 2005 adjudication.

## ORDER

And now, July 22, 2005, upon consideration of the report and recommendations of the Disciplinary Board dated April 28, 2005, it is hereby ordered that Delancey W. Davis be and he is suspended from the bar of this Commonwealth for a period of one year and one day, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.